# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| John Doe Growers 1-7, and John Doe B Pool Grower 1 on behalf of Themselves and all others similarly situated as a class<br>                    Plaintiffs,<br>          v.<br><br>Ocean Spray Cranberries, Inc., An agricultural cooperative.<br><br>                    Defendant. | C.A. No.<br><br>Date: October 27, 2012 |

## CLASS ACTION COMPLAINT

Plaintiffs, through their attorneys, bring this civil action on behalf of themselves and all others similarly situated, for damages, injunctions and declaratory relief under the antitrust laws of the United States, Agricultural laws of the United States, the antitrust laws of the Commonwealth of Massachusetts and the Federal Rules of Civil Procedure.

### INTRODUCTION

This case arises out of actions by Defendant illegally to discriminate against its own members in the sale of cranberry products as well as to fix the price of cranberry juice concentrate at constantly lower prices, for the purpose of stopping its grower members from leaving it in order to get more money for their crop and to cause independent growers to become members because Defendant constantly needs more cranberries to supply the constantly greater

demand for its products; and with the effect of greatly reducing the market price of independently grown cranberries, and its B pool of cranberries, all causing great losses to the Plaintiff classes.

## JURISDICTION AND VENUE

(1)   This court has subject matter jurisdiction over this case under 28 U.S.C. 1331 (General Federal Question) which arises out of violations by defendant of 15 U.S.C. Sec. 1 & 2, commonly known as the Sherman Anti-trust Act, an Order of this court in Case Number 55-418-3, of 7 U.S.C. 291, commonly known as the Capper-Volstead Act, and under Federal Rule of Civil Procedure 71 (Enforcement of a court Order by a non-party).

(2)   This court has personal jurisdiction over all of the parties under 28 U.S.C. 1332 (Diversity of Citizenship) (Aggregated amount in controversy exceeds $5,000,000.00).  Diversity exists between the entire plaintiff class and defendant.

(3)   This court has pendent jurisdiction over the state law claims arising under Massachusetts General Laws, Chapter 93A because the actions complained of herein all originated at Defendant's corporate headquarters in Lakeville/Middleborough, Massachusetts.

## THE PARTIES

(4) John Doe Growers 1-7 and the class they represent are all cranberry growers who are not members of Defendant's Cooperative, referred to herein as "independent growers", located in the states of Massachusetts, New Jersey, Wisconsin, Oregon and Washington.  A few members of the class are located in other states, but none are located in Delaware, the state of incorporation of Defendant.  None are located outside of the United States.

   John Doe B Pool Grower 1 and the Class he represents are all cranberry growers who are

members of Defendant's cooperative, referred to herein as "B" pool members, located in the states of Massachusetts, New Jersey, Wisconsin, Oregon and Washington.  A few members of the Class are located in other states, but none are located in Delaware, the state of incorporation of Defendant.  None are located outside of the United States.

(5)  Defendant is a Delaware corporation, with its principal place of business in Lakeville/Middleborough, Massachusetts. Ocean Spray is an agricultural cooperative authorized under 7 U.S.C. 291, otherwise known as the Capper-Volstead Act, which provides for a limited exemption from the provisions of the antitrust laws of the United States that prohibit contracts, combinations or conspiracies in restraint of trade. 15 U.S.C. 3, otherwise known as the Sherman Antitrust Act.  Without the Capper Volstead Act it would be illegal for Ocean Spray to conduct the affairs collectively of its member growers by jointly marketing their crop.  It is owned by more than 700 cranberry growers and nearly 50 grapefruit growers.  Ocean Spray is North America's leading producer of canned and bottled juice drinks, and has been the best-selling brand name in the canned and bottled juice category since 1981.  Ocean Spray posted fiscal 2010 sales of over $2.0 billion.  Ocean Spray does business throughout the United States. **Exhibit One**.

   Ocean Spray's member growers deliver their crop to Ocean Spray and Ocean Spray markets some as fresh cranberries and most are processed into juice, cranberry sauce, dried cranberries, and cranberry juice concentrate.  Its member growers have no say regarding the price at which Ocean Spray sells any of said products.  However, the enabling statute, the Capper Volstead Act, mandates, ". . .That such associations are operated for the mutual benefit of the members . . .".  Ocean Spray sells its products worldwide to businesses that either use or resell said products.

However, it is restricted in its sale of products by a Consent Order to which it agreed in CA No. 55-418-3 issued by this court as shown below.  Ocean Spray has been violating this order during the past three years.

## CLASS ACTION ALLEGATIONS

(6)     Based upon the nature of the trade and commerce involved, the total number of Class members is such that joinder of the claims of all Class members would be impracticable.

(7) Plaintiff's claims are typical of the claims of the Class, and plaintiffs will fairly and adequately protect the interests of the Class.  Plaintiffs have no relevant conflicts of interest with other members of the Class and have retained competent counsel experienced in class action and antitrust litigation.

(8) Common questions of law and fact exist, including:

   a. Whether Defendant has engaged in conduct which violates the Consent Order;

   b. Whether Defendant has engaged in conduct which violates 7 U.S.C. 291;

   c. Whether Defendant has engaged in conduct which violates 15 U.S.C. 1 & 2;

   d. Whether Defendant has engaged in conduct which violates M.G.L. c. 93A, Sec. 2 and 11;

   e. The existence, duration, and illegality of the conduct alleged herein.

      These and other questions of law and fact are common to the Class and predominate over any questions that may arise affecting only individual Class members.

(9) Class action treatment is a superior method for the fair and efficient adjudication of the controversy described herein.  The class action vehicle provides an efficient method for the enforcement of the right of Plaintiffs and Class members; and such litigation can be managed fairly.  Plaintiffs know of no unusual problems of management and notice.

(10) Any difficulties that may exist in the management of the class action are far outweighed by the benefits of the class action procedure, including but not limited to providing claimants with a suitable method for the redress of their claims.

## FACTS

(11) In 1957 Defendant's predecessor corporation, National Cranberry Association, agreed to a Consent Order, attached hereto as **Exhibit Two**, in a case brought against it by the United States Department of Justice in which it charged Defendant, inter alia, with monopolizing interstate trade and commerce in cranberry products in violation of sections 1 and 2 of the Sherman Antitrust Act (15 U.S.C. Sec. 1 and 2) and that "defendants are continuing and will continue said offenses unless the relief hereinafter prayed for is granted."

(12) In said Consent Order Defendant agreed that it would be enjoined and would refrain from:

> "(F)   (1) . . . receiving from any person not a member of [its cooperative] for marketing any cranberries except on the same terms or conditions as to payment therefor as would apply if such person were a member;"

and that it would be enjoined and would refrain from:

> "(2) Discriminating among members in the administration of any pooling of cranberries;".

(13) Independent growers sell substantially all of their cranberries to processors who make cranberry juice concentrate from them and then make cranberry juice from the concentrate in competition with defendant.

(14) The following chart shows the average payment received by independent growers per barrel of cranberries compared with the average amount received by Defendant's members per barrel of cranberries for the years 2006 to 2011.   2009 is the year Defendant set up its "auction" which is

a violation of the provisions of the Consent Order referenced above.

**CHART 1** (Receipts per barrel in $)

Independent growers do not all receive the same amount for their crop.   The following figures are based on an average of receipts, per barrel, by growers.  They are presented here to show the trend in the industry as a whole.  Defendant's  growers receipts per barrel come from Ocean Spray documents. **Exhibits Three, Four and Five**.

|  | **INDEPENDENT GROWERS** | | **DEFENDANT'S GROWERS** | |
|---|---|---|---|---|
|  | **Oregon** | **Wisconsin and Massachusetts** | **A Pool** | **B Pool** |
| **2006** | 50.00 | 40.00 | 47.69 | 32.93 |
| **2007** | 65.00 | 50.00 | 54.75 | 68.85 |
| **2008** | 63.50 | 70.00 | 60.00 | 52.60 |
| **2009** | 16.00 | 37.00 | 64.00 | 26.37 |
| **2010** | 15.00 | 18.00 | 63.11 | 18.56 |
| **2011** | 33.00 | 26.00 | 60.00 | 28.50 |

**CHART 2**

Average  Price of Cranberry Juice Concentrate per gallon.  Not everyone receives the same amount.  These figures are presented here to show the trend in the industry as a whole.

| **2006** | 31.74 |
|---|---|
| **2007** | 35.00 |
| **2008** | 53.63 |
| **2009** | 57.10 |
| **2010** | 27.26 |
| **2011** | 18.79 |
| **2012** | 24.25 |

(15) During 2007 and 2008 Defendant's President was very concerned about the greater prices being received by independent growers compared with Defendant's growers. **Exhibit Six**.

(16) During 2007 And 2008 Defendant's President was also very concerned about Defendant's growers who left Defendant's Cooperative because they could get more money for their cranberries as independent growers. Exhibit Six.

(17) During 2007 and 2008 Defendant's President was also greatly concerned about not having enough cranberries to meet Defendant's needs in the future. **Exhibit Seven**.

(18) Defendant devised a scheme illegally to interfere with the payments being received for their cranberries by independent growers.

(19) Said scheme involved fixing the market price of cranberry juice concentrate sold to processors by arranging to hold a periodic "auction" of said concentrate. **Exhibit Eight**.

(20) Defendant's illegal scheme involved setting up a so called "auction" of said concentrate, at which the users were invited to attend and bid for whatever quantity each wished to purchase.

(21) Then, before the first such "auction", and continued for each succeeding auction, Defendant announced that "At no stage during the process do customers bid a price". **Exhibit Nine**.

(22) Ocean Spray determines, at each stage of the "auction" what the price shall be for the next round, and it passes along to its B Pool members any loss.

(23) The helpless members of the B Pool must accept for their crop whatever Ocean Spray decides to pay them.  Chart 1.

(24) In 2011 Defendant announced that the opening bid for the next auction would be 85% of the previous auction's closing prices. **Exhibit Ten**.

(25) In fact the announcement of said "auction" was nothing other than Defendant choosing a

price of cranberry juice concentrate and guaranteeing to sell at that price for a specified period of time for the purpose and with the effect of fixing the market price of cranberry juice concentrate.

(26) Then in the succeeding years Defendant kept below the price at which it sold in 2009 which can be seen in Chart 2 showing the average price at which cranberry juice concentrate was sold from 2006 to 2012.

(27) Chart 2 shows the average payment received per barrel of cranberries by independent growers and defendant's growers from 2006 to 2012.

(28) By these practices Defendant took actions which had the purpose and the effect of causing the price of cranberry juice concentrate to be so low that the above referenced processors could not compete with those processors who purchased their concentrate from Ocean Spray unless they were able to buy cranberries from the independent growers at a low enough price to enable them to make cranberry juice concentrate at the same cost as Ocean Spray was selling theirs.

(29) As a result, some independent growers refused to sell their cranberries at that price. When some of these growers found that they could no longer get paid what they expected for their cranberries, they were enticed by Ocean Spray to join it.

(30) For some of the independent growers Defendant was the only outlet they could find to sell their cranberries.

(31) Defendant admitted these growers as members of Ocean Spray and accepted their crop for sale by Ocean Spray but set up a scheme to pay them much less money for their cranberries than that which Defendant pays to its other members, in violation of its responsibilities under its enabling legislation, the Capper-Volstead Act, 7 U.S.C. 291 the Consent Order and M.G.L. c. 93A, Sections Two and Eleven.. **Exhibit Eleven**.

(32) Cranberries from Defendant's members were considered to be in Defendant's "A" pool.

(33) Cranberries from the previously independent growers were considered to be in Defendant's "B" pool. Exhibit Eleven.

(34) The payments to the growers in the "A" pool were significantly greater than the payments to the growers in the "B" pool as shown in Chart 1.

(35) Defendant then used the cranberries in said B pool to make cranberry juice concentrate and sell it at continually lower prices, which resulted in contributors to the B pool receiving continually lower prices for their cranberries. Charts 1 & 2.

(36) These lower prices have forced some of the independent growers to go out of business, thereby to cease competing with Defendant.

## COUNT I

### (CAPPER-VOLSTEAD ACT-B POOL MEMBERS)

(37) Paragraphs 1-36 are incorporated herein by reference as though fully set forth.

(38) The actions of Defendant described herein discriminate against those members of Defendant whose cranberries are considered to be in the B pool in that Defendant is not operating the Association for the mutual benefit of the B pool members who are being paid for their cranberries less than one-half the amount Defendant has been paying to its members whose cranberries are considered to be in it's A pool. Chart 1.

(39) The actions of Defendant described herein are in violation of 7 U.S.C. 291 (The Capper-Volstead Act) which authorizes the formation of agricultural cooperatives such as Ocean Spray,

> Provided, however, that such associations are operated for the
> mutual benefit of the members thereof . . . .

(40) Because of Defendant's violations of its enabling act during the past four years, Defendants

cannot be considered to have been engaged legally in the operation of an agricultural cooperative during the period of time in which it failed to administer the cooperative for the mutual benefit of its B pool members.

WHEREFORE, Plaintiffs ask this court to declare that all actions of Defendant during the period of time that it failed to administer the cooperative for the mutual benefit of its B pool members are not protected by, and constitute violations of, the provisions of 7 U.S.C. 291 (the Capper-Volstead Act); to issue an injunction to prohibit such violations in the future; and to award damages in the amount of $120,000,000.00 , together with interest, costs and attorney's fees and  such other relief as the court shall deem just and proper in the circumstances.

## COUNT II

### (M.G.L. c.93A Sec. 11  B POOL MEMBERS)

(41) Paragraphs 1-40 are incorporated herein by reference as though fully set forth.

(42) Defendant's scheme to accept new growers into its cooperative and to dump their cranberries at prices so low that said growers do not receive, at most, even half of what other Ocean Spray growers receive, despite having signed contracts that are required by law to be "for the mutual benefit of the members . . . ." is inherently unfair and deceptive and clearly a violation of M.G.L. c. 93A, Sec. 11.

WHEREFORE, Plaintiff asks the court to find that such actions by defendant constitute unfair and deceptive practices in violation of M.G.L. c. 93A, Sec. 11.  Plaintiff class demand damages in the amount of $120,000,000.00 tripled in accordance with the provisions of M.G.L. c. 93A, Sec.2 and 11, together with an injunction to prohibit such actions in the future, plus interest, costs, attorneys' fees and such other relief as the court deems just and proper in the

circumstances.

## COUNT III

## (CONSENT ORDER B POOL MEMBERS)

(43)  Paragraphs 1-42 are incorporated herein by reference as though fully set forth herein.

(44)  Some members of the class joined the B pool of Ocean Spray.

(45) All of said members were discriminated against by Ocean Spray in that Ocean Spray paid them substantially less for their cranberries than it paid to members whose cranberries were considered to be in the A pool. Chart 1.

(46)  Said payments by Ocean Spray are in violation of the Consent Order set forth in paragraph (6) above and attached  hereto as Exhibit Two.

(47) The actions cited herein by Defendant constitute price-fixing;  continually selling cranberry juice concentrate at prices that do not return to its B Pool members enough to cover its members' cost of producing the cranberries from which the concentrate is made; attempting to monopolize and monopolizing trade in interstate commerce in violation of 15 U.S.C. Sec. 1 & 2 (The Sherman Antitrust Act); and in violation of  M.G.L c.93A, Sec. 2 and 11.

(48) Before and at the time Defendant began its scheme to fix the price of cranberry juice concentrate, and at all times thereafter, Defendant was seeking to obtain additional cranberries because it said that it did not have enough cranberries to meet its needs, Exhibit Seven, investing $90 Million Dollars in new cranberry bogs. **Exhibit Twelve**(January 14, 2009, "We desperately need more fruit").  See, **Exhibit Thirteen** "Chairman Podvin - The new cranberry acreage is needed by the cooperative to supply growth of our business" **Exhibit Thirteen, Page 2** "Retention of growers . . . and expanding acreage are the principal challenges facing us today."

(49) Having lost the protection of its authorizing statute, 7 U.S.C. 291 (The Capper-Volstead Act) by its violations of said statute, defendant's actions on behalf of its 700+ grower members constitute contracts, combinations or conspiracies in restraint of trade, all in violation of the Sherman Antitrust Act, 15 U.S.C. 1 and 2.

(50) The "B" Pool contract was entered into by the formerly independent growers in good faith. They have honored their responsibilities under said contract, but, nowhere in said contract is there any language which permits Ocean Spray to sell the crop of said growers at prices that are clearly not in the mutual interest of said growers.  Ocean Spray has failed in its obligation under said contract to fulfill its obligation of good faith and fair dealing and which is inherently unfair and deceptive in violation of M.G.L. c.93A, Section 11.

   WHEREFORE, plaintiffs demand damages in the amount of $120,000,000.00 trebled in accordance with the provisions of M.G.L. c. 93A, Sec. 11, together with interest, costs, attorney's fees,  and an injunction to prohibit said violations by Ocean Spray in the future, plus such other relief as the court shall deem just and proper in the circumstances.

## COUNT IV

### (ALL STATUTES INDEPENDENT GROWERS)

(51) Paragraphs 1-50 are incorporated herein by reference as though fully set forth herein.

(52) The remaining members of the class are all independent growers who have been the victims of Ocean Spray's illegal price fixing of cranberry juice concentrate.

(53) All of said members have lost a great amount of money as a result of said price fixing by Ocean Spray, as shown in Charts 1 & 2.

(54)  The actions cited herein by Defendant constitute price-fixing; attempting to monopolize

and monopolizing trade in interstate commerce in violation of 15 U.S.C. Sec. 1 & 2 (The Sherman Antitrust Act) and in violation of M.G.L. c. 93A, Sec. 11.

WHEREFORE, plaintiffs demand damages in the amount of $500,000,000.00 trebled in accordance with the provisions of M.G.L. c. 93A, Sec. 11 and the Sherman Antitrust Act, 15 U.S.C. Sec. 1 & 2, together with interest, costs, attorney's fees and an injunction to prevent Ocean Spray from engaging in such actions in the future plus such other relief as the court shall deem just and proper in the circumstances.

## COUNT V

### (CONSENT ORDER-ENTIRE CLASS)

(55) Paragraphs 1-54 are incorporated herein by reference as though fully set forth.

(56) Defendant agreed in the Consent Order that it would be enjoined and would be restrained from

> (D) Contracting for or otherwise arranging for the processing of any of [its] cranberries by any other processor at any time when [it] has available capacity and could process such cranberries itself without incurring substantially greater expense;

(57) The converting of cranberries into cranberry juice concentrate and then selling it to other processors for the production of cranberry juice, which is the only use for said concentrate, is no different in effect than Defendant selling cranberries to those processors for them to convert into cranberry juice concentrate and finally into cranberry juice, in violation of the Consent Order.

(58) As a result of said sales of cranberry juice concentrate to other processors Plaintiff class has lost a great amount of money, and Defendant admits that it "does not sell concentrate through

the auction to unload excess supply . . . .: **Exhibit Fourteen, Page 2**.

". . .we have had . . . ten consecutive years of increasing cranberry fruit demand. . . ." **Exhibit Fifteen.**

(59) The actions of defendant described herein constitute a violation of Section (D) of the Consent Order, 15 U.S.C Sec. 1 & 2 (The Sherman Act) and are unfair and deceptive in violation of M.G.L. c. 93A, Sec. 11.

WHEREFORE, Plaintiffs seek an Order requiring Defendant to cease and desist from all such sales together with damages in the amount of $620,000,000.00 trebled in accordance with the provisions of M.G.L. c. 93A, Sec. 11, and 15 U.S.C. Sec. 1 & 2, together with interest, costs, attorney's fees and an injunction to prevent Ocean Spray from engaging in said sales in the future plus such other relief as the court shall deem just and proper in the circumstances.

## COUNT VI
## (ALL STATUTES ENTIRE CLASS)

(60) Paragraphs 1-59 are incorporated herein by reference as though fully set forth.

(61) The actions of Defendant described herein constitute unfair and deceptive acts and practices in violation of M.G.L. c. 93A, Sec. 11, and attempts to monopolize and monopolizing interstate commerce in cranberry juice in violation of 15 U.S.C. Sec. 1 & 2 (The Sherman Antitrust Act) as well as violations of 7 U.S.C. 291 (The Capper-Volstead Act).

WHEREFORE Plaintiffs seek an injunction requiring Defendant to cease and desist from all such actions together with damages in the amount of $620,000,000.00 trebled in accordance with the provisions of M.G.L. c. 93A, Sec. 2 and 11 and 15 U.S.C. Sec. 1 & 2 (The Sherman Antitrust Act) together with interest, costs, attorney's fees and an injunction to prevent Ocean Spray from

engaging in said illegal acts in the future plus such other relief as the court shall deem just and proper in the circumstances.

## COUNT VII

### (CHAPTER 93A ENTIRE CLASS)

(62) Paragraphs 1-61 are incorporated herein by reference as though fully set forth.

(63) The actions of defendant described above in violation of its enabling act, 7 U.S.C. 291 (The Capper- Volstead Act); The Consent Order; 15 U.S.C. Sec.1 and 2 (The Sherman Antitrust Act); and Massachusetts General Laws, c. 93A, Sec. 2 and 11 all show a deliberate disregard for the law and for its responsibilities under it, clearly unfair and deceptive acts and practices which caused damages to all classes in the amount of $620,000,000.00, for which this court should award triple damages, interest, costs, and attorneys' fees together with an injunction to prevent all of the illegal acts from being engaged in in the future, and such other relief as the court shall deem just and proper in the circumstances.

/s/ Arthur R. Miller
Arthur R. Miller, Esq.
University Professor, NYU School of Law
40 Washington Square South, Room 430F
New York, NY 10012
212-992-8147

/s/ Norman Jackman
Norman Jackman, Esq.
JACKMAN & ROTH LLP
1600 Massachusetts Avenue, Suite 502
Cambridge, Massachusetts 02138
617-682-8049