(G) Entering into, enforcing or adhering to any agreement or arrangement for the destruction of cranberries with any other person engaged in the processing or marketing of cranberries.

V

The plaintiff may, within one year after the expiration of five years immediately following the date of entry of this Final Judgment, and without the necessity of showing any change in circumstances occurring subsequent to the entry hereof, petition this Court for such further relief as it may then deem necessary or appropriate with respect to the marketing by defendant NCA of cranberries for processing and processed cranberries. In such event, if plaintiff's petition prays for relief requiring NCA to divest itself of any processing facilities, the defendants NCA, ADM and United shall be required to assume the burden of showing cause why the requested relief on the facts and the law should not be granted. Also in such event, neither the entry of this Final Judgment nor any of the provisions hereof shall operate as a bar or estoppel as to any issue of law or fact raised in such proceeding or bar or estop the plaintiff or the defendants NCA, ADM and United from introducing any evidence or testimony therein with respect to any such issue.

VI

Defendants ADM, United, Makepeace and Urann are jointly and severally enjoined and restrained from:

(A) Purchasing cranberries from others and reselling or otherwise disposing of them to artificially raise, depress or stabilize market price levels of fresh or processed cranberries;

(B) Delivering to NCA any cranberries other than those grown by them or their subsidiaries, or for them or their subsidiaries pursuant to agreement;

5

(C) Exercising voting rights on common stock of NCA for a period of three years immediately following the date of entry of this Final Judgment, except that:

    (1) ADM, United, Makepeace and Urann may individually exercise their voting rights on common stock of NCA during the aforesaid three-year period for the election of directors of NCA, provided, however, that none of them may vote for more than 10% of the total number of directors to be elected in each such election; and

    (2) ADM, United, Makepeace and Urann may individually exercise their voting rights on common stock of NCA during the aforesaid three-year period in connection with any matter under NCA's charter or by-laws or applicable Delaware statutes requiring a stockholders' vote and which is directly connected with the transfer, assignment, pledging, sale, liquidation or other disposition of capital assets of NCA, or with any amendment of the Certificate of Incorporation of NCA.

Provided, however, that this subsection (C) shall not be deemed to apply to any person acquiring in good faith common stock of NCA from any of said defendants by transfer or by operation of law, if such person is not an officer, director, servant, employee or agent of any of said defendants;

(D) Inducing or compelling, or attempting to induce or compel any financial institution to take any action with respect to the granting or calling of loans for the purpose of discriminating against any borrower who is a competitor of NCA.

6

## VII

In the event that any of the provisions of this Final Judgment shall conflict with any provision of any marketing agreement with, or marketing order of, the Secretary of Agriculture, the defendant NCA, without showing any other change in circumstances and upon notice to the Assistant Attorney General in charge of the Antitrust Division, may petition this Court for such modification of such of the terms of this Final Judgment as is necessary to permit compliance with such marketing agreement or order.

## VIII

(A) This Final Judgment shall take effect upon the expiration of ten (10) days after the date of its entry.

(B) For the purpose of securing compliance with this Final Judgment and for no other purpose, duly authorized representatives of the Department of Justice shall, on written request of the Attorney General, or the Assistant Attorney General in charge of the Antitrust Division, and on reasonable notice to any consenting defendant made to its principal office, be permitted, subject to any legally recognized privilege:

(1) Access, during the office hours of said defendant, to those books, ledgers, accounts, correspondence, memoranda, and other records and documents in the possession or under the control of said defendant which relate to any matter contained in this Final Judgment;

(2) Subject to the reasonable convenience of said defendant and without restraint or interference from it, to interview officers or employees of the defendant, who may have counsel present, regarding any such matters.

Upon written request of the Attorney General, or the Assistant Attorney General in charge of the Antitrust Division, said defendant shall submit such reports in writing with respect to the matters contained in this Final Judgment as may from time to time be necessary to the enforcement of this Final Judgment.

No information obtained by the means permitted in this Section VIII shall be divulged by any representative of the Department of Justice to any person other than a duly authorized representative of the Department of Justice except in the course of legal proceedings in which the United States is a party for the purpose of securing compliance with this Final Judgment or as otherwise required by law.

IX

The provisions of this Final Judgment shall not be deemed to relate to activities or operations outside of the United States, its territories and possessions not affecting the domestic commerce of the United States.

X

Jurisdiction is retained for the purpose of enabling any of the parties to this Final Judgment to apply to this Court at any time for such further orders and directions as may be necessary or appropriate for the construction or carrying out of this Final Judgment, for the modification of any of the provisions herein and for the



8

enforcement of compliance therewith and punishment of violations there-
of.

Dated: 10/28, 1957

_[signature]_
United States District Judge

We hereby consent to the making and entry of the foregoing Final Judgment.

For the Plaintiff:

_Victor R. Hansen_
VICTOR R. HANSEN
Assistant Attorney General

_[signature]_          _William J. Elkins_
WORTH ROWLEY          WILLIAM J. ELKINS

_[signature]_          _John J. Galgay_
WILLIAM D. KILGORE, JR.   JOHN J. GALGAY
                       Attorneys, Department of Justice

_[signature]_
RICHARD B. O'DONNELL
Attorneys, Department of Justice

_Anthony Julian_       Judgment entered Oct. 28, 1957
ANTHONY JULIAN         JOHN A. CANAVAN, CLERK
United States Attorney   by _[signature]_
                       Deputy Clerk

For the Defendants:

NATIONAL CRANBERRY ASSOCIATION   MARCUS L. URANN
_[signatures]_                    _[signatures]_
                                  Withington, Cross, Park & McLean

A. D. MAKEPEACE CO.              JOHN C. MAKEPEACE
_[signatures]_                    _[signatures]_
UNITED CAPE COD CRANBERRY CO.

_[signatures]_                   Entered Oct. 28, 1957
                                 JOHN A. CANAVAN, CLERK
                                 by _[signature]_
                                 Deputy Clerk.

## Calendar Year 2008 through 2011 Estimated Cranberry "A" Pool Cash Payments
### December 02, 2009 Update

| | CY2008 | CY2009 | CY2010 | CY2011 |
|---|---|---|---|---|
| January Advance | 8.00 | 9.00 | 10.00 | 10.00 |
| February Advance | 7.00 | 7.00 | — | TBD |
| March Advance | — | — | 8.00 | TBD |
| April Advance | 6.00 | 6.00 | — | TBD |
| April Final Payments | 6.67 | 7.28 | 7.00 | 9.87 |
| June Advance | — | — | 8.64 | TBD |
| July Advance | 9.00 | 9.00 | — | TBD |
| September Advance | — | — | 10.00 | TBD |
| Harvest Advances | 10.00 | 10.00 | 10.00 | 10.00 |
| Subtotal | 46.67 | 48.28 | 53.64 | TBD |
| March Incentives | 3.97 | 1.86 | 1.63 | TBD |
| Cash in Calendar Year | $50.64 | $50.14 | $55.27 | TBD |

| | 2007 Pool | 2008 Pool | 2009 Pool | 2010 Pool |
|---|---|---|---|---|
| Gross Returns Less Pref. Dividends | $54.75 | $60.00 | $64.00 | $67.00 |
| Equity Retain (Stock and ARE)* | $7.50 | $7.50 | $7.50 | $7.50 |
| ARE Redemption** | $2.50 | $2.50 | $3.50 | $3.50 |

* Equity Retain issuances are anticipated to be in May (Stock) and December (ARE). The $7.50 is anticipated to be $4.00 in stock and $3.50 in AREs beginning with the 2009 Pool.

** ARE Redemptions are anticipated to be in August. The ARE amount is the estimated average for all growers based upon the projected crop. Individual ARE redemptions are dependent upon the amount of ARE's originally issued to each individual grower for the crop year(s) to be redeemed. The ARE Redemption Policy will be revisited in the event the 2010 Shareholder Proxy Resolution vote to increase the amount of Authorized Common Stock not be approved.

Forward Looking Statements: The timing and the amount of actual cash payments and equity retains may vary materially from the above estimates based on factors affecting patronage net earnings, including pricing, sales, and competitive conditions. Distribution of each estimated payment and equity retain are subject to prior approval by the Board of Directors. Updated December 02, 2009.

EXHIBIT THREE

Calendar Year 2010 through 2013 Estimated Cranberry "A" Pool Cash Payments

| July 2012 Update | CY2010 | CY2011 | CY2012 | CY2013 |
|---|---|---|---|---|
| January Advance | 10.00 | 10.00 | 10.00 | 8.00 |
| February Advance | 8.00 | 8.00 | 8.00 | 8.00 |
| April Advance | 7.00 | 8.00 | 8.00 | 8.00 |
| April Final Payments | 10.48 | 11.48 | 7.93 | |
| May Final Payments* | | | | 7.33* |
| July Advance | 10.00 | 10.00 | 8.00 | 9.00 |
| Harvest Advances | 10.00 | 10.00 | 10.00 | 10.00 |
| Subtotal | 55.48 | 57.48 | 51.93 | 50.33 |
| March Incentives | 1.65 | 1.68 | 3.17 | TBD |
| Cash in Calendar Year | $57.13 | $59.16 | $55.10 | TBD |

| | 2009 Pool | 2010 Pool | 2011 Pool | 2012 Pool |
|---|---|---|---|---|
| Gross Returns Less Pref. Dividends | $65.63 | $63.11 | $60.00 | TBD |
| Equity Retain (Stock and ARE)* | $7.50 | $7.50 | $7.50 | $7.50 |

• Equity Retain issuances are anticipated to be in May (Stock) and December (ARE). The $7.50 is anticipated to be $4.00 in stock and $3.50 in AREs beginning with the 2009 Pool. ARE Redemptions are anticipated to occur in August 2010. ARE redemptions will be suspended for pool year 2010 and 2011. ARE redemptions will resume in pool year 2012.

Forward Looking Statements:  The timing and the amount of actual cash payments and equity retains may vary materially from the above estimates based on factors affecting patronage net earnings, including pricing, sales, and competitive conditions. Distribution of each estimated payment and equity retain are subject to prior approval by the Board of Directors. Updated July 5, 2012.

*Assumes that Pool Year 2011, closes in March 2013.

EXHIBIT FOUR